**John O. JAMES, Plaintiff,**

v.

**SHELL AMERICAN PETROLEUM COMPANY, a corporation, Defendant.**

**Civ. No. 1419.**

United States District Court,
N. D. Indiana, South Bend Division.

Nov. 10, 1954.

Orville T. Fox, Logansport, Ind., for plaintiff.

Barnes, Hickam, Pantzer & Boyd, Alan W. Boyd, Frederic D. Anderson, Alan C. Boyd, Indianapolis, Ind., Joseph A. Roper, South Bend, Ind., for defendant.

PARKINSON, District Judge.

This is an action founded upon an amended complaint in three paragraphs to which the defendant has filed an answer in two paragraphs, and upon the issues thus formed, was tried to the court.

The plaintiff in his trial memorandum states that paragraph one of his complaint seeks recovery of commissions withheld from his pay checks, telephone cost defendant agreed to pay, statutory liquidated damages, interest and attorney's fees pursuant to a written contract and the law of Indiana; that paragraph two seeks recovery in quantum meruit for money the plaintiff paid to the sales force and office personnel; for trucks and equipment in addition to his contract obligation and interest, and paragraph three seeks recovery for monies had and received consisting of insurance return premium, overpayment of note and interest. The plaintiff presented his case upon this theory and the Court will render its decision accordingly.

As to paragraph three, the uncontradicted evidence shows that the plaintiff received full credit for the insurance return premium and the overpayment of the note, if we adopt the terminology of the plaintiff and designate it as an overpayment, and there can be no recovery by the plaintiff on this paragraph.

■■ As to paragraph two, the written contract entered into by and between the parties, and upon which the plaintiff declares in paragraph one of his amended complaint, is clear and unambiguous and there is no evidence in this record that the sales force and office personnel were employees of the defendant and that the plaintiff was not obligated to pay them pursuant to Clause 48 of the contract and the position of the plaintiff that he was obligated to furnish, maintain and operate at his personal expense but one truck and the defendant was obligated as to any other trucks is untenable and not supported by any evidence. The burden rests upon the plaintiff to prove the material allegations of his complaint. He has failed to discharge that burden and is entitled to no recovery on paragraph two.

■ As to paragraph one, the fact is inescapable that the plaintiff declares upon the written contract, seeks to retain all monies and benefits he has received thereunder but contends it to be void under the Wage Statutes of Indiana. This Court is in complete harmony with this legislation, but it has no application to a contract such as the one here involved and such was not the intention of the legislature of Indiana in the enactment thereof, in the opinion of this Court.

■ The uncontradicted evidence discloses that the defendant has fully performed all of the conditions of the contract upon its part to be performed and the plaintiff has received everything due to him thereunder. The mere fact, if it be a fact as contended by counsel for plaintiff in argument, that the contract was not a profitable one for the plaintiff is no cause for its abrogation. There is no allegation or proof of any mistake, fraud or misrepresentation. Many contracts into which parties have entered have been unprofitable, but this Court knows of no rule of law which permits a court to hold void a contract upon that ground. Courts cannot write a new contract for the parties.

Therefore, the Court having considered all of the evidence adduced, the arguments of counsel and the law applicable thereto, does now make the following

### Findings of Fact

#### 1

The plaintiff is a citizen of the State of Indiana and the defendant is a corporation incorporated under the laws of the State of Delaware, and the amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

#### 2

The plaintiff was employed by the defendant as a commissioned salesman of petroleum products from March 13, 1951 until June 10, 1952 under a contract which consists of two written documents, one of which is entitled "Commission Agreement", and the other, "Credit Department Instruction Letter No. 14", which is made a part thereof by reference

in paragraph 22 of the "Commission Agreement". The pertinent portions of the Commission Agreement are as follows:

"1. The Salesman shall use due care and diligence in the performance of his duties and in the promotion of the business of the Company in the territory served by the Company's bulk depot located at Logansport, Indiana, which territory is outlined on the map attached and made a part hereof, and he shall abide by the rules and regulations recited in this agreement. In return therefor the Company will allow the Salesman, as full settlement for his services and for all other expenses incurred by him under this agreement, the following commissions on the commodities authorized to be sold, delivered and collected for by said Salesman:"

There follows a stated amount per gallon for each of a number of specified products and a stated percentage for sale of specialties.

"6. The Salesman shall furnish suitable truck chassis and shall maintain and operate the same at his personal expense. The Salesman shall buy and have installed adequate pumping equipment for dispensing petroleum products. If such equipment is purchased from the Company and installed by the Company the Salesman shall pay for equipment and labor for installation."

"16. Each Salesman shall prepare a report of his monthly expenses, including a record of wages paid, which report is required for the calculation of applicable taxes".

"22. The Salesman shall be held fully responsible and accountable for prompt payment of all accounts receivable, when due, resulting from sales on credit, in accordance with Credit Department Instruction Letter No. 14 dated Sept. 6, 1950, which letter is attached hereto and made a part of this agreement the same as if written herein. Receipt and full understanding of said letter is hereby acknowledged by the Salesman."

"27. It is intended by this agreement that the Salesman shall never become indebted to the Company, but should he become indebted on account of violation of instructions or for shortage of funds, stocks or anything else, (determined by audit or otherwise), the Salesman shall immediately settle such indebtedness at the office of the Company at Kokomo, Indiana, and the Salesman hereby authorizes the Company to deduct from any amounts due him any such sum or sums, and the Company may apply commissions due the Salesman to such debt or debts, and the semi-monthly check, along with any statements attached thereto, is notice of any such deductions and acceptance of said check is binding on the Salesman, as hereinafter set out."

"28. The semi-monthly check issued by the Company is in settlement of the amount due the Salesman for the period ending as indicated on the check and the cashing or acceptance of such check shall be full and final settlement up to the time stipulated thereon and shall constitute an approval and an acceptance of all deductions made by the Company."

"40. The Company shall bear reasonable electric light and power expense and one-half the telephone exchange cost. The Salesman shall be responsible for all other operating expenses, such as the other half of telephone exchange, long distance calls, heat, rags, etc."

"48. If the Salesman should employ an assistant or assistants, such employment shall be at Salesman's sole expense and he shall so employ

such only who possess legal qualifications for such work and such qualifications as meet the Company's prescribed requirements for its employees."

"52. This agreement may be terminated at any time by either the Salesman or the Company."

The pertinent portions of the Credit Department Instruction Letter No. 14 are as follows:

"1. A Commission Salesman is fully responsible and accountable to Shell American Petroleum Company for prompt payment, when due, of all Accounts Receivable resulting from sales on credit, none of which shall be assumed by the Company. Such responsibility of the Salesmen for any account shall continue until the commission agreement is terminated and thereafter until the account is fully paid."

"2. All unpaid accounts, and any collections thereof in whole or in part, shall be regarded as held in trust for the Company until the Company is fully paid all obligations due it from the Salesman."

"14. When a customer's account becomes due according to its terms, collection of that account must be made or the account will be deductible from any commission settlement following."

"20. Notwithstanding the right of the Company to deduct in full from any commission settlement for any out of term account, the Salesman is to maintain a collection reserve with the Company in a special Collection Reserve Account.

"(a) The amount of the collection reserve to be maintained by the Salesman should not be less than 20% of the total amount of the accounts out of terms at the end of the month plus 20% of the amount outstanding at the end of the second month, 40% of the amount outstanding at the end of the third month and 80% of the amount outstanding at the end of the fourth month as shown by the Analysis of Accounts for the month.

"(b) The amount of the reserve will be adjusted from month to month in accordance with the percentage of out of term and past due accounts at the end of the previous month.

"(c) Any account that has not been collected by the end of the fifth month may be charged to the Salesman's Collection Reserve Account.

"(d) The foregoing is not intended to supersede the right of the Company to deduct in full for any out of term account or the credit responsibility of the Salesman as outlined in other paragraphs of this instruction letter."

"21. When a Salesman's Commission Agreement is terminated for any reason whatsoever, final settlement of commissions due the Salesman may be held up by the Company for thirty (30) days, or until such time as all accounts for which the Salesman is responsible have been paid in full."

3

The plaintiff terminated his employment on or about June 10, 1952, by notice to defendant.

4

During the period from March 13, 1951, to and including May 31, 1952, the defendant, in computing the amount due the plaintiff for commissions, deducted from the plaintiff's gross commissions the total amount of $3,687.96. All of such deductions were made by the defendant in comformity to items of indebtedness of plaintiff to defendant appearing on the books and records kept in the regular course of its business.

5

At the time of delivery of each semi-monthly settlement check to the plaintiff for commissions due, including the check delivered May 31, 1952, the defendant

furnished to the plaintiff a statement showing each of the deductions from gross commissions, the total amount of which is stated in Finding No. 4 hereof, for the period covered by such semi-monthly settlement. The plaintiff received and cashed each such settlement check up to and including the check delivered for the period ending May 31, 1952, without objection and in full and final settlement of the amount of compensation due for each such period.

6

In addition to the deductions up to and including May 31, 1952, referred to in Findings No. 4 and No. 5, defendant at the time plaintiff terminated the employment withheld the sum of $203.30, the amount of plaintiff's gross commission for the period from June 1 to June 10, 1952, pending the receipt of payment of the outstanding accounts for the payment of which plaintiff was responsible under the contract. On June 10, 1952, and thereafter until approximately August 8, 1952, the amount of such outstanding accounts, together with other items of indebtedness of plaintiff to defendant exceeded the amount of all credits to which plaintiff was entitled, including the amount of such gross commissions for June 1 to June 10, 1952. As of July 11, 1952, defendant's books and records maintained in the usual course of its business showed that plaintiff was entitled to the following credits:

| | |
|---|---|
| Collection Reserve | $ 590.82 |
| Employees Deposit | 25.00 |
| Cancellation of truck rental charge | 2.00 |
| Payments for truck insurance and premium refund | 430.66 |
| Commission 6/1/52 to 6/10/52 | 203.30 |
| Credit for remittance over and above note balance and interest | 63.76 |
| Total | $1,315.54 |

and was indebted to defendant in the following amounts:

| | |
|---|---|
| Unpaid balance of accounts for payment of which plaintiff was responsible | $1,452.12 |
| Merchandise stock loss disclosed in audit of 5/28/52 in excess of deductions for period ending 5/31/52 | 37.74 |
| Merchandise stock loss in audit 6/12/52 (such stock loss was not discovered until after statement of July 11, 1952 was furnished the plaintiff, but appeared in statement as of August 10, 1952) | 33.62 |
| Truck insurance premium | 373.72 |
| Correction for failure to furnish tax exemption certificate on sale of tractor fuel | 2.60 |
| Total | $1,899.80 |

7

As of August 8, 1952 the unpaid balance on the outstanding accounts referred to in Finding No. 6 had been reduced to a point leaving a credit balance of $403.67 in plaintiff's favor for which amount defendant sent plaintiff a check. Thereafter as said unpaid balance of such outstanding accounts was further reduced defendant sent additional checks to plaintiff making a total of $849.87 for which plaintiff has received checks since the termination of said employment. Said balance of outstanding accounts was reduced by such payments to $14.75, representing unpaid accounts for the payment of which plaintiff was responsible under the contract.

8

By such payments defendant has fully accounted to plaintiff for all credits to which he has been entitled at any time since June 10, 1952, including the amount of his gross commission for the period June 1 to June 10, 1952, and the items of $280.66 and $63.76 alleged in the third paragraph of complaint. The amount of $14.75 referred to in Finding No. 7 will

not be owing to plaintiff unless and until the accounts represented thereby shall have been paid to defendant.

9

The entire amounts of wages and truck expense paid by plaintiff as alleged in the second paragraph of the amended complaint were for expenses which plaintiff agreed to pay under the terms of the contract and there is no evidence that either of the parties intended that plaintiff be reimbursed for any part thereof. Such payments were reported by plaintiff as expenses for which he was entitled to deductions in his individual federal income tax returns in 1951 and 1952.

10

Defendant has performed all of the terms and conditions of the employment contract between plaintiff and defendant to be performed by it, including the payment of one-half plaintiff's telephone exchange cost during the period of his employment.

Upon the foregoing special findings of fact, the Court does now state its

Conclusions of Law

1

This Court has jurisdiction of the parties to and the subject matter of the action.

2

The defendant has fully performed all of the conditions of the contract in suit upon its part to be performed.

3

The law is with the defendant, and the plaintiff is not entitled to recover any amount from the defendant in this action.

4

The defendant is entitled to a judgment against the plaintiff that the plaintiff take nothing by reason of his complaint herein.

Judgment ordered entered in favor of the defendant and that the plaintiff take nothing by reason of his complaint herein at the costs of the plaintiff.